IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | 18 CR 758 |
| | ) | |
| v. | ) | Hon. Judge J. Tharp, *Presiding* |
| | ) | |
| PIERRE ROBINSON, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT PIERRE ROBINSON'S REPLY
TO THE GOVERNMENT'S REPONSE TO DEFENDANT'S MOTION
FOR RELEASE ON CONDITIONS DUE TO CORONAVIRUS PANDEMIC**

NOW COMES the defendant, Pierre Robinson, by and through his attorneys, Greenberg Trial Lawyers and Law Office of Steven H. Fine, replying in support of his Motion for Release on Conditions Due to the Coronavirus Pandemic as follows:

**Background**

Mr. Robinson is requesting that this Court order his release on these serious charges because conditions can be fashioned to ensure both his appearance and the safety of the public, and because of the ongoing Covid-19 pandemic. He has been in continuous custody since he was arrested by the Chicago police in July 2016 and charged with possession of a firearm. First, he was in the custody of the Cook County Jail, eventually moving to the MCC when he was federally charged for the same firearm. When this indictment was brought to Robinson was serving a sentence in the Bureau of prisons of 33 months, having pled guilty to the firearms offense. He waived any detention hearing on this matter at that time, just as he had previously waived his detention hearing in 2016.

1

When analyzing the pandemic and its effect here, Mr. Robinson is requesting this Court not only look at it from a personal health standpoint, but also from a practical standpoint. The case itself is relatively straightforward, it is not much different from the run-of-the-mill (if there is such a thing) murder case. The way it is charged simply offers an alternative avenue to bring in gang evidence that might otherwise not be allowed. It could be tried in a week or less. But this pandemic has wreaked havoc on that possibility.

Counsel is obviously unaware of the plans that are being made by the court for trials, although they are aware of what has been rumored or speculated upon. Regardless, from a practical standpoint, the reality is that who knows when a trial is going to take place in any criminal case. It would be foolish to believe the jurors are going to be willing to sit in the jury box or debate in the jury room. While there are certainly ideas such as having the jurors sit in the courtroom pews and deliberate in an empty courtroom, who knows if that is a practical solution. The jury thrives on intimacy, and if that is taken away the deliberative process will be negatively impacted. Having them spread far and wide across the courtroom as the trial takes place will negatively affect their ability to observe the proceedings, distance will affect their ability to view the witness, as well as counsel, arguments will be far less impactful, and the dynamics completely out of kilter. Having them spread far and wide across the courtroom as they deliberate will be more like having a discussion with an across the street neighbor from each other's front porch. Jurors are known to split into groups to discuss issues or alliances, but no jurors are

2

going to want to have any kind of intimate discussions. And of course all of this presumes that jurors are even going to show up. Let's face it, mail in the form of a juror summons these days will probably be viewed with the same disdain as a letter from the IRS.

Factually, Glenn Houston was shot and killed inside the Eberhart Foods Store on the south west corner of 79th Street and Eberhart Avenue in Chicago on December 23, 2014. Mr. Robinson was indicted with VICAR murder, in violation of 18 USC 1959, on November 7, 2018—nearly four years later.

The shooter, who is recorded on store video, enters the store twice, with his face covered. The first time, he circles the store's interior, and as he is walking toward the exit you can see a grainy view of his face. Glenn Houston is entering and holds the door for a F/B and the shooter. Houston walks into the store, looks towards the back, then approaches the front counter. After being in the store for only five seconds, Houston is shown looking to his right towards the entrance, as he covers up and stumbles backwards. A different camera view shows that the shooter had reentered.

The immediate on scene investigation revealed that the shooter had apparently been looking for someone, exited as Houston entered, re-entered after Houston, took 2 or 3 steps and fired a black revolver at Houston who was at the counter. The shooter used his bare hand on the handle on the way out.

Interviews of the eyewitnesses did not reveal an identification. Additional video was obtained from other cameras in the area, but no identification was

3

made. All of the video was analyzed by CPD facial recognition software; no identification was made.

On December 30, 2014, operating based upon a tip from alleged anonymous callers, detectives placed Robinson into a photo array and showed it to both workers at the Eberhart Food Store. Neither recognized anyone in the photo array.

The investigation was at a dead end until January 7, 2015 when "Witness 7" contacted Area South. Witness 7 told the detectives that she arrived on scene as Houston was being placed into the ambulance and immediately "heard from people on the street" that the shooter was Pierre Robinson. She related that there has been an ongoing BD/GD conflict, that Houston was not in a gang but grew up with the BD's, and that if GD's could not shoot a BD then they would go after their associates. The detectives showed her the video of the shooting. She made a "positive ID" of Robinson as the man walking down the aisle by his "facial features and clothing," and also "immediately identified" the shooter reentering the store as Pierre Robinson. An assistant state's attorney conducted a video recorded interview with her (defense counsel does not have the video) . The prosecutor did not approve felony charges after the interview.

Five months later, on May 29, 2015, the detectives issued a community alert to be broadcast on local networks of the store video/screenshots. On June 8, 2016, they learned that "A/S [Area South] had received messages" regarding "the homicide offender, Pierre Robinson".

On June 12, 2015, R/D's had "Witness 4" (one of the caller(s)) come into Area South. Witness 4 reported that on June 8, 2015, "Witness 5" had called Witness 4 and told Witness 4 that Pierre's photo was on TV, and that they were asking people to identify him. After the call, Witness 5 text messaged the screenshot from the CCTV to Witness 4. Witness 4 told police that as soon as she saw the photograph she recognized the person to be Pierre. The R/D's checked the text and identified the photo as the same as their community alert. She also reported knowing both Robinson and Houston for their whole lives. R/D's showed her 3 screenshots from the same video and Witness 4 ID'd the photos and initial video as Robinson, explained as she "identified the clothing of the offender stating that the offender was wearing the same clothing that [Robinson] was wearing walking in the store aisle."

Witness 5 reported that on the day of the incident she received a text message that her friend was shot and killed, and soon after "heard on the street that Pierre was the shooter." She also ID's Robinson by clothing at the time of the shooting. She sat for a video recorded interview with the prosecutor (defense counsel does not have the video).

After reviewing the additional identification evidence and speaking to the witnesses the prosecutor again did not charge Robinson with Houston's murder.

The government has included in its response what they apparently believe is the clearest photo taken from the video. While the photo contained within the government's motion appears somewhat clear at first, when focusing on potentially

5

identifiable characteristics of the person depicted it becomes evident that those traits are exceedingly unclear (particularly the shooter's face). For reference, the below photo is a screenshot taken from the photo on page two of their response. It is not further zoomed in, de-enhanced, or edited in any way; it is simply a portion the same photo, digitally cut out from the same.



As the government concedes at the onset of its response, the identifications of Mr. Robinson in this case come from this store video, made by individuals who otherwise knew Mr. Robinson—not eyewitnesses. Moreover, prior to viewing the video and making their identifications, these same folks informed police that they already believed Robinson to be the shooter because of rumors they heard on the street. None of them claimed to have witnessed the shooting or the shooter. Moreover, the defense believes that they are rival gang members who are convicted felons, and notwithstanding their familial relationship to Mr. Robinson, place their loyalty to their own gang above that relationship.

The government writes, on pages three and four of its Response, that the shooter was wearing the same clothing that Mr. Robinson was wearing when he was arrested six days before the shooting. That arrest photo of Mr. Robinson clearly depicts him wearing a black North Face brand jacket over a light-colored

6

White Sox shirt with a black crew collar. *Gov. Response P. 4.* In contrast, it appears that the shooter in the food store video is wearing a gray shirt with dissimilar writing, and a ski cap. *Id. at P. 2, 3.* The only similarity, as far as one can tell from the information available, is that the shooter is also wearing a black jacket with, possibly, an emblem.

In an effort to give life to its 'gang-inspired-revenge' theory, the government details a number of social media postings from account(s) thought to be utilized by Mr. Robinson. *Gov. Response P. 4-5.* The first post the government references is a December 23rd birthday dedication to Chris Spraggins, a young man who hung out in the same area as Mr. Robinson who was shot and killed earlier in the year. *Id. at P. 4.* It does not appear that anyone was ever arrested for the Spraggins homicide, but the government concedes that "there was no indication that Houston was personally involved in the killing." *Id. at P. 1.* Instead it argues—without citing to any direct evidence and relying on implication alone—that Mr. "Robinson held MTV's responsible" and that Mr. "Houston was affiliated with the MTV Black Disciples." *Id.*

The government also puts forth a December 23rd post from after the shooting, which said "Wassup Its Chris G Day Pop Out" *Id. at P. 4.* All the post says is that its Chris' birthday and that people should come out to celebrate.

The next post cited the response is from December 24th. *Gov. Response P. 4.* It reads, in full, "smoke a blunt, and I'm back at it." In including this, the government is seemingly suggesting that, by posting this, Mr. Robinson was

7

indicating he was getting back to some sort of nefarious conduct. *Id*. What the prosecution fails to recognize—in addition to the statement itself being wholly innocuous—is that this is merely a lyric. Specifically, the refrain from "On My Soul" by artist G Herbo ("smoke a blunt, *now* I'm back at it").

Lastly, it quotes another post from the account, posted two days after the shooting—which refers to a Ruger, baby choppers, and Osama Bin Laden (*Id. at P. 4-5*)—again suggesting that the post implicates Mr. Robinson in the Houston homicide. *Id*. This is the exact intro to "War Ready" by the artist Rich Homie Quan. To be sure, the song's title is hashtagged at the end of the post ("#WARREADY"). *Id*. Additionally, the gun used to shoot Mr. Houston was a revolver.

The response then makes reference to the homicide of Hamood Dawoodi and shooting of Deshawn Danzler, arguing that Danzler was another MTV member targeted after the homicide of an alleged Evans Mob Member—this time Lynell Simmons. *Gov. Response P. 6*. While his counsel are only privy to limited information with respect to this homicide, one fact remains at the forefront: Mr. Robinson is not and has never been charged with this murder.

Additionally, based upon the allegations made here, it appears that Mr. Danzler is the only surviving witness to this shooting, and he has already told law enforcement that he did not see the person who shot him. While the government alleges to have obtained a phone call in which Mr. Danzler told his brother in jail

that Mr. Robinson was the shooter, it does not appear that Mr. Danzler has ever told law enforcement that he saw the shooter.

**Argument**

The Government argues that Mr. Robinson "failed to rebut the presumption in favor of detention in this case." They are incorrect. The statute provides that in a case involving a crime of violence,

> a rebuttable presumption arises that no condition or combination of conditions will reasonably assure the safety of any other person and the community if such judicial officer finds that—
> **A.** the person has been convicted of a Federal offense that is described in subsection (f)(1) of this section, or of a State or local offense that would have been an offense described in subsection (f)(1) of this section if a circumstance giving rise to Federal jurisdiction had existed;
> **B.** the offense described in subparagraph (A) was committed while the person was on release pending trial for a Federal, State, or local offense;
> **C.** and a period of not more than five years has elapsed since the date of conviction, or the release of the person from imprisonment, for the offense described in subparagraph (A), whichever is later.

18 U.S.C. 3142(e)(2).

As detailed in his motion, Mr. Robinson is requesting temporary release from his pretrial detention amidst a worldwide health pandemic, to live with his mother with a GPS band affixed to his ankle and other condition the court may deem fit. It would be next to impossible for Mr. Robinson to pose a danger to the community under these conditions.

With regard to the nature and circumstances of the offense, the government argues that "the weight of the evidence against defendant is strong." *Gov. Response P. 9.* To the contrary, the case rests upon rank speculation from social media posts and third-party identifications from unclear video, by persons who already believed—via word on the street—that Mr. Robinson was the shooter prior to viewing the video.

Lastly, there has been no credible eyewitness identification. While the government alleges that an eye-witness from inside the store has identified the defendant, the defense has not yet received any discovery relating that identification. But from speaking with the prosecutor it appears that it is an individual who a number of occasions did not identify Mr. Robinson, before ultimately doing so without explanation. I. *Gov. Response P. 9.*

As to Mr. Robinson's criminal history, the government refers to two unlawful use of a weapon convictions that were vacated after the underlying statute was invalidated by the Illinois Supreme Court. The statute was found to be unconstitutional, violative of the Second Amendment to the United States Constitution, in *People v. Aguilar. Aguilar,* 2013 IL 112116. To draw a negative inference from a constitutional right would be improper. See *Doyle v Ohio,* 426 U.S. 610 (1976) (use of defendant's exercise of his post arrest right to remain silent during cross-examination violates due process).

True, the BOP has implemented a comprehensive plan of action in an effort to combat the spread of this disease inside their institutions. But they did so for a

reason: correctional institutions are inherently and exceptionally prone to the spread of disease. And absent testing (not just screening) every person, every time they enter the facility, there is simply no way to sufficiently prevent the disease from circulating. This has proven itself true, as the MCC has been referred to as "one of the largest outbreak sites among Federal [BOP] facilities" with roughly 20% or more of the facility already testing positive.

To his credit, notwithstanding these charges, Robinson is an orderly at the facility. This means that his behavior has been exemplary. But as an orderly he is tasked with cleaning up after others, a dangerous position to be in given the pandemic and his health issues.

The government calls into the question the seriousness of Mr. Robinson's underlying medical condition, syncope disorder, in light of the Covid-19 Virus. *Gov. Response P. 10*. Syncope is not the only medical condition put forth in his motion—he has a significant history of cardiac issues in his family of legitimate concern. Further, as stated in the government's response and reported to pretrial services, Mr. Robinson has already experienced substantial pulmonary issues having developed, among other issues, lung le[s]ions as early as age 14. Id. at P. 10-11. Cardiac issues are the main concern in this pandemic, and place people most at risk.

Lastly, there is the concern of trial preparation. Counsel cannot prepare for trial jointly with Mr. Robinson if he remains in custody. Counsel should not have to jeopardize their own health in order to prepare for trial. And the communication

methods that are now available are simply inadequate. His counsel have continued to work on this case, from home, but have been unable to have the kind of meaningful interaction that is needed to prepare for trial.

### Conclusion

FOR EACH of the foregoing reasons as well as those stated in his motion, the defendant, Pierre Robinson, respectfully requests that this court grant his motion for release on conditions and for any other relief that it may deem proper and fit.

                                                  Respectfully Submitted,

                                                  One of Mr. Robinson's Attorneys

**GREENBERG TRIAL LAWYERS**
**Steven A. Greenberg**
**Nicholas V. Burris**
**53 W. Jackson Blvd., Suite 1260**
**Chicago, Illinois 60604**
**(312) 879-9500**

**Law Office of Steven H. Fine**
**53 W. Jackson Blvd**
**Suite 1260**
**Chicago, Il 60604**
**312-922-0855**

CERTIFICATE OF SERVICE

I, Steven Fine, an attorney, do hereby certify that I caused a copy of the foregoing motion to be served upon:

Rajnath Laud
U.S. Attorney's Office, Fifth Floor
219 S. Dearborn Street
Chicago, Illinois 60604

Pursuant to Fed.R.Crim.P. 49, Fed.R.Civ.P.5, L.R. 5.5, and the General Order on Electronic Case Filing of the United States District Court for the Northern District of Illinois, Eastern Division on May 21, 2020.

                                                  s/Steven H. Fine
                                                  Steven H. Fine
                                                  53 W. Jackson Blvd
                                                  Suite 1260
                                                  Chicago, Illinois 60604
                                                  (312) 922-0855